IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Corey S. Flugga, | : | |
| Petitioner | : | Case No. 2:11-cv-00126 |
| v. | : | Judge Frost |
| Warden, Ross Correctional Institution, | : | Magistrate Judge Abel |
| Respondent | : | |

# Report and Recommendation

Petitioner Corey S. Flugga, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Magistrate Judge on petitioner's motion under 28 U.S.C. § 2254 seeking a writ of habeas corpus (doc. 2).

## I. Facts and Procedural History

Flugga was indicted by the July 2008 Term of the Licking County, Ohio Grand Jury on two alternative counts of murder of chid-victim Carson Hanson in violation of Ohio Revised Core § 2903.02(B). One count alleges that the murder occurred while Flugga was committing or attempting to commit felonious assault; the other count alleged that the murder occurred while he was committing or attempting to commit the offense of endangering children. Flugga pled not guilty to the charges in the indictment. A jury trial commenced, and Flugga was found guilty as charged in the indictment, which included a serious physical harm special finding on count two. On January 9,

1

2009, Flugga was sentenced on each count to fifteen years to life in prison; the sentences were to run concurrently.

On February 10, 2011, Flugga filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts the following grounds for relief:

> GROUND ONE: The State Court decision was contrary to Established U.S. Supreme precedent when it upheld Petitioners conviction that is based on insufficient evidence–in violation of the 5th, 6th, and 14th amendments of U.S. constitution.
>
> Supporting facts: There was insufficient evidence to support the convictions of murder where the impermissible stacking of inferences was relied upon to prove all essential element of the crime. The due process right guaranteed to the petitioner in the 6th and 14th amendments, and the right to be found guilty by a jury, in the 6th amendments were violated when without the stacking of unsupported inferences all essential element of the Crime Accused the petitioner could not have been found guilty.
>
> GROUND TWO: The State Courts Decision was contrary to Federal precedent when it rejected the claim that his Appellant counsel was ineffective for not raising on Direct Appeals that the trial Court lacked Subject-matter jurisdiction against his 6th and 14th amendments U.S. Constitution.
>
> Supporting facts: On Direct Appeal the Petitioners Counsel did not raise on Appeals that the trial Court lacked Subject matter jurisdiction to try or convict the petitioner where his indictment failed to inform him of all the essential element of Felony Murder 2903.02(B) ORC when it lacked the essential Mental State.
>
> GROUND THREE: The state courts decision was contrary to federal precedent when the petitioners constitutional right protecting him from double jeopardy and right to effective counsel was violated when his trial counsel and appellant counsel failed to protect him from be convicted of two murder counts with a single victim violating his sixth and fourteenth constitutional amendments.

> Supporting facts: The state court decision was contrary to federal precedent when it [rejected] the claim that petitioners [Appellate] Counsel was ineffective for not raising on direct appeals that the trial counsel failed to protect him from Double Jeopardy in violation of his Sixth and Fourteenth Amendments [rights].

Doc. 2.

The Court of Appeals of Ohio, Fifth District, Licking County, set forth the facts of this case on direct appeal in case number 2009-CA-5. The factual findings "shall be presumed to be correct." 28 U.S.C. § 2254(e). Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

> On July 7, 2008, appellant was indicted by the Licking County Grand Jury on two counts of Murder.
> The charges stem from an incident that occurred on June 21, 2008. On that date, appellant was the caretaker of his stepson, three-year old Carson Hanson. Heather Flugga, the mother of Carson Hanson, left for work at 2:30 p.m. At approximately 3:00 p.m., appellant called Ms. Flugga's brother, Matt Cosart, seeking advice on punishing Carson who had messed his pants and would not stay in the corner. Appellant further told Matt that he had spanked Carson, but that it did not affect him.
> Appellant took a second, younger child outside to play and occasionally returned to the residence to check on Carson. On the final check, appellant did not find the child in his room. Appellant testified that he located the child in the bathtub, lying on his back, covered in vomit. Appellant contends that he attempted CPR and other efforts while a neighbor called 9-1-1.
> 9-1-1 was called at 5:29 p.m. EMS responded and the child was transported to Licking Memorial Hospital. Efforts to revive the child continued until it was determined that such efforts were futile and the child was pronounced dead.
> By his own admission, appellant was the only individual in the immediate area of his stepson, Carson Hanson, during the timeframe in question. (2T. at 381; 3T. at 519).
> Dr. Jeffrey Lee responded to the hospital and later performed the autopsy. Based upon his physical observations and the results of the autopsy, he concluded that the cause of death was an acute hemorrhage

due to the crushing of the mesentery tissues and that the manner of death was homicide. Dr. Lee further testified that Carson lost approximately 22% of his blood volume due to this hemorrhaging, and established the timeline from the point of injury to time of death as 15 minutes to an hour, with the outside range of 2 hours. Dr. Lee was positive that a fist caused the entire injury complex, and that this was the result of a punch to the abdomen, "no questions asked."

Dr. Lee specifically ruled out the scenario of Carson inflicting this injury on himself, either by punching himself or by falling onto something. In ruling out other hypothetical's, Dr. Lee testified that:

"It's such a peculiar pattern for it to be anything other than a fist, for one thing. . . there's nothing that can cause this type of pattern on the skin and the injury deep as well. You can get the injury deep with other methods, you can get the injury on the skin with other things, but you can't get both of these in the same setting or the same set of circumstances any other way than a punch to the abdomen." (1T. at 181).

Criminalist Tim Elliget testified as to his inspection of the crime scene. Based upon his observations of the surface bruise patterns on Carson, Elliget opined that the bruises on the child's stomach were indications of punching or knuckle bruising. Mr. Elliget inspected the apartment for anything that might have been consistent with the bruise pattern; however, he was unable to locate anything inside the apartment that was consistent with the pattern of the bruises.

Dr. James Bryant testified on appellant's behalf. Although he did not differ with Dr. Lee on the cause of death, he did take issue with Dr. Lee's conclusion on the manner of death. Dr. Bryant did not believe that the bruising was likely caused by a fist or a blow from the human hand. It was the opinion of Dr. Bryant that anything could have been the cause of the injury–a fall onto an object for example–and that it could not be stated that a "punch" was the cause. Dr. Bryant testified that he was not familiar with the autopsy details and the results regarding the crushed mesentery tissue and its relationship to the surface bruise patterns. When asked by the prosecuting attorney, Dr. Bryant was not able or willing to offer an alternative explanation regarding the manner of death.

Appellant testified that he did not strike the child and that he committed no act which could have caused the injuries which lead to the death of the child.

On January 8, 2009, the jury found the appellant guilty as charged in the indictment. Appellant was sentenced to serve an aggregate prison term of fifteen years to life.

*State v. Flugga*, No. 2009-CA-5, 2009 WL 3419582, at *1-2 (Ohio App. 5 Dist., Oct. 19, 2009).

## II.    Discussion

Flugga timely filed his petition. He properly exhausted his claims, and none of his claims were procedurally defaulted. As a result, the merits of petitioner's claims must be examined.

A court's evaluation of whether a petitioner is entitled to federal habeas relief is governed by an amendment to 28 U.S.C. § 2254, enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The statute further states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e).

### A. Insufficiency of Evidence

In his first claim, petitioner argues that the state court decision was based on insufficient evidence because the conviction was based on inferences upon inferences. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court outlined the standard to be applied in a federal habeas corpus proceeding when the claim is made that a person has been convicted in a state court upon insufficient evidence. The Court held that "the relevant question is, whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

Petitioner relies on *United States v. Summers*, 414 F.3d 1287 (10th Cir. 2005). In *Summers,* the Tenth Circuit overturned the conviction of the petitioner on the basis that there was insufficient evidence to sustain his conviction. The *Summers* Court stated that "a conviction cannot be sustained if obtained by 'piling inference on inference'". *Id.* at 1294 (citations omitted). The court further stated:

> Inferences are necessary and indeed proper in a criminal trial, and "a jury has wide latitude to determine factual issues and to draw reasonable inferences from circumstantial evidence." *United States v. McCarrick*, 294 F.3d 1286, 1293 (11th Cir. 2002). An inference is reasonable if it "flows from logical and probabilistic reasoning," i.e., with experience serving as the touchstone, a jury's inference is permissible where there is a reasonable probability that the conclusion flows from the facts in

6

> evidence. [*U.S. v.* ]*Jones*, 44 F.3d [860, 865 (10th Cir. 1995)]. The rule that prohibits the stacking of inference upon inference merely indicates that at some point along a rational continuum, inferences may become so attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion. In other words, "the chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one." *United States v. Shahane*, 517 F.2d 1173, 1178 (8th Cir.1975).

*U.S. v. Summers*, 414 F.3d 1287, 1295 (10th Cir. 2005)(footnotes omitted). The facts in *Summers*, however, are distinguishable from this case. In *Summers*, the only evidence linking the defendant to a bank robbery was that he was present when the perpetrators were arrested. There was no proof regarding the identity of an unknown person at other stages of the crime, and no evidence linking him to the crime was found on his person although he was in close proximity to such evidence as a passenger in the car when stopped by the police. *Id.* at 1296.

The Ohio Court of Appeals found that there was constitutionally sufficient evidence supporting the jury's verdict:

> [*P18] Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, superseded by constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 1997 Ohio 355, 684 N.E.2d 668.
>
> . . .

[*P23] In the case at bar, the appellant argues, essentially, that the circumstantial evidence does not prove beyond a reasonable doubt that appellant is guilty of the charged offenses. Appellant also argues that the evidence presented by the appellant to rebut the appellee's experts' opinions creates reasonable doubt as to the appellant's guilt. We disagree.

. . .

> It appears that, in determining the appellant's guilt or innocence, the jury was left to consider the appellant's versions of the event, medical testimony, autopsy findings and the conclusions of both the appellant's and appellees experts. In considering the evidence, the jury was essentially asked to determine whether Carson's fatal injuries were the result of an accident, the abusive actions of the appellant, or the actions of some unidentified third party. Prior to deliberations, the jury was instructed that it was free to believe or disbelieve any witness and was given guidance on the manner in which they could judge the credibility of both lay and expert witnesses.

[*P46] Based upon the verdict, it appears that the jury gave more weight to the testimony of the medical professionals and experts who treated and examined Carson's pattern of injuries. The mere fact that the jury chose to believe the testimony of the prosecution's witnesses does not render a verdict against the manifest weight of the evidence. *State v. Moore*, Wayne App. No. 03CA0019, 2003 Ohio 6817 at paragraph 18. Upon a review of the record, we find that the evidence provided by the state's witnesses supported the jury's verdict.

[*P47] Dr. Jeffrey Lee responded to the hospital and later performed the autopsy. Based upon his physical observations and the results of the autopsy, he concluded that the cause of death was an acute hemorrhage due to the crushing of the mesentery tissues and that the manner of death was homicide. Dr. Lee further testified that Carson lost approximately 22% of his blood volume due to this hemorrhaging, and established the timeline from the point of injury to time of death as 15 minutes to an hour, with the outside range of 2 hours. Dr. Lee was positive that a fist caused the entire injury complex, and that this was the result of a punch to the abdomen, "no questions asked."

[*P48] Dr. Lee, in discussing Carson Hanson's bruise pattern interpretation, described it as a "textbook pattern injury." He testified this bruise pattern is what you see when a child is punched, i.e., bruises from knuckles or tips of fingers. In support of his conclusion that the victim was punched, Dr. Lee testified that:

[*P49] ". . . the pattern of the bruises with their size and shape, practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 also a clustering of the bruises, the lack of other distinctive linear type of injuries in the abdomen plus the overwhelming deep injury that does not seem to equate with what we see on the surface injury. That's very distinctive, specifically for punches, because of the small area of force that this large force is directed." (1T. at 175-176).

[*P50] In this context, Dr. Lee specifically ruled out the scenario of Carson inflicting this injury on himself, either by punching himself or by falling onto an object. Dr. Lee testified that a fall would not result in the same pattern injury on the skin, as well as the deep injury. Further, multiple "falls" would be required. (1T. 180-181).

[*P51] Dr. James Bryant, the appellant's expert, had a different perspective. Although he did not differ with Dr. Lee on the cause of death, he did take issue with Dr. Lee's conclusion on the manner of death. While he opined that, a fist could have caused the surface bruising, in his opinion it was not definitive. Dr. Bryant did not believe that a fist or a blow likely caused the bruising. It was the opinion of the defense expert that anything could have been the cause of the injury - a fall onto an object for example -- and that it could not be stated that a "punch" was the cause. (2T. at 431-432; 449). However, Dr. Bryant did not review any autopsy photographs, photographs of the scene, investigative reports generated by law enforcement, or witness statements. (2T. at 438-442).

[*P52] Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant knowingly caused serious physical harm to Carson, and that appellant recklessly abused Carson.

*P53] We hold, therefore, that the State met its burden of production regarding felony murder as defined in R.C. 2903.02(B), with the underlying offense of violence being felonious assault and, murder in

violation of R.C. 2903.02(B) with child endangering as a predicate offense. Accordingly, there was sufficient evidence to support appellant's convictions.

[*P54] "A fundamental premise of our criminal trial system is that 'the jury is the lie detector.' *United States v. Barnard*, 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their S.Ct. 1261, 1266-1267, 140 L. Ed. 2d 413.

[*P55] Although appellant cross-examined the witnesses and presented his own expert to support his claim that he did not inflict serious physical harm or abuse Carson, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881, 111 S. Ct. 228, 112 L. Ed. 2d 183.

The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP-739, 2000 Ohio App. LEXIS 1138, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236, 1996 Ohio App. LEXIS 2245. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, Franklin App. No. 02AP-604, 2003 Ohio 958, at P 21, *citing State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke*, Franklin App. No. 02AP-1238, 2003 Ohio 2889, *citing State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.

September 7, 2010 Opinion, Ohio Court of Appeals for the Fifth Appellate District, 2009-Ohio-5648, Doc. 9-1, PAGEID ## 427, 431, 433, and 435-39.

Here, the state appellate court properly applied federal law when determining that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The appellate court noted that the evidence before the fact finder consisted of petitioner's versions of the event, medical testimony, autopsy findings and the conclusions of both experts. The prosecution's expert, Dr. Lee, testified that the bruise pattern indicated that the injury resulted from a punch. Dr. Lee further testified that the patten of the bruises ruled out the possibility that Carson was injured by falling on an object. Dr. Bryant, the defense expert, opined that although a fist could have caused the bruising, anything could have been the cause of the injury including a fall onto an object. Criminalist Tim Elliget testified that no objects were found in the apartment that were consistent with the pattern of bruising.

The jury is charged with weighing the evidence and making credibility determinations. Simply because his expert rebutted the testimony of the prosecution's expert, it was not unreasonable for the jury to conclude that petitioner was guilty. Three alternative theories were presented to the fact finder concerning Carson's injuries. The injuries were the result of an accident, the abusive actions of petitioner, or the actions of an unidentified third party. No evidence was presented as to the presence of a third person. Concluding that the injuries were the result of a punch, and not an accident, and that petitioner was the person who punched the victim does not reflect impermissible inferences upon inferences. Under 28 U.S.C. § 2254(d), the Ohio Court of Appeals' decision is binding on this federal habeas corpus court because it was not

contrary to nor an unreasonable application of clearly established federal law. Accordingly, I conclude that this claim is without merit.

### B. Ineffectiveness of Counsel

When reviewing the actions of an attorney, the reasonableness of the counsel's performance, from the counsel's perspective at the time of the alleged error, is evaluated in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). A highly deferential standard of review is utilized. *Id*. at 384. In determining whether counsel made serious errors, the standard to which the attorney is held is not that of the most astute counsel, but instead that of reasonably effective assistance. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). To conclude that counsel was ineffective, there must be a showing that the actions of counsel were "not within the range of competence demanded of attorneys in criminal cases." *Snarks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988).

The right to counsel guaranteed by the Sixth Amendment is the right to "effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Counsel's performance in a criminal proceeding cannot be viewed ineffective unless "counsel's representation fell below an objective standard of reasonableness." In this regard, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668 (l984).

The defendant must also show that the deficient performance prejudiced the defense so seriously that he was deprived of a fair trial, *Id.* at 687, and that there is a reasonable probability that he would have been acquitted but for the counsel's unprofessional errors. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the previous outcome. *Id*. Lastly, the Court must also consider that there is a strong presumption that defense counsel is competent. *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989).

Petitioner argues that his appellate counsel was ineffective because he failed to raise a substantial constitutional claim on direct appeal. Petitioner maintains that the trial court had no subject matter jurisdiction over him because he was not given adequate notice of the charges against in order to defend himself. He specifically argues that the required mens rea was not identified in the indictment. Petitioner further argues that he was denied the effective assistance of counsel because his trial and

appellate counsel failed to protect him from being convicted of two murder counts when there was a single victim.

The state court was required to review petitioner's claims for ineffective assistance of counsel in accordance with *Strickland v. Washington*, 466 U.S. 688 (1984). The appellate court properly applied *Strickland* when it denied petitioner's application to reopen his appeal because inclusion of the omitted issues would not have changed the result:

> Appellant maintains that he received ineffective assistance of counsel because his counsel failed to argue that the indictment in this case failed to charge all the essential elements of the offense of murder and resulted in a lack of notice to him of the mens rea required to commit the offense of murder. Further, . . . appellant claims he received ineffective assistance of counsel because he was convicted of two counts of murder.
> 
> The prosecution is entitled to offer differing theories as to what actually transpired in the commission of an offense and is therefore entitled to use its discretion in deciding which charges to level against the defendant. [Citations of state law omitted.] In [*State v.*] *Miller,* [46 Ohio St.3d 384 (2002)] the Ohio Supreme Court further held, "felony murder, with the underlying offense of violence being felonious assault, is supported by evidence which establishes that the defendant knowingly caused physical harm to the victim." Further, if a defendant commits an unintended homicide while committing another felony, the defendant can be convicted of murder. *Dean v. United States* (2009), \_\_ U.S.\_\_, 129 S.Ct. 1849, 1855. The Ohio Supreme Court has held that the culpable mental state required to support a conviction under R.C. 2903.02(B) is the same one necessary to support a conviction for the underlying felony offense. [Citations omitted.]
> 
> Appellant was sufficiently apprised of the charges against him and was adequately protected against double jeopardy. Appellant's alleged error was not so grievous that "but for the error, the outcome of the trial clearly would have been otherwise." [Citations omitted.] . . .
> . . .
> Finally, appellant claims he received ineffective assistance of counsel because he was convicted of two counts of murder. Appellant can

> be convicted of both counts in the indictment even if they are allied
> offenses. State v. Whitfield (Jan. 5, 2010), No. 2008-1869, 2010-Ohio-2.
> Accordingly, we find that the issue raises "no genuine issue as to whether
> [he] was deprived of the effective assistance of counsel on appeal.

*State v. Flugga*, No. 2009 CA-5, at 4-6 (5th App. Dist. Jan. 27, 2010). Petitioner has failed to demonstrate that this decision is contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Appellate counsel is not ineffective for failing to raise an issue that lacks merit. *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Accordingly, I conclude that petitioner's claims based on the ineffective assistance of counsel are without merit.

### III. Conclusion

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that all claims be **DISMISSED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981);

*United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/Mark R. Abel  
United States Magistrate Judge